IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORI D. L., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:24-CV-340-JFJ |
| | ) |
| LELAND DUDEK,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Lori D. L. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**     **General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

---

[1] Effective February 16, 2025, pursuant to Federal Rule of Civil Procedure 25(d), Leland Dudek, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

§ 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 20-year-old female, applied for Title XVI supplemental security income benefits on September 27, 2021, alleging a disability onset date of October 1, 2008, later amended to September 27, 2021. R. 10, 170-175, 258-313. Plaintiff claimed she was unable to work due to conditions including epilepsy, chronic migraines, ADD, vagus nerve stimulator, and insomnia. *See* R. 192. Plaintiff's claim for benefits was denied initially on October 12, 2022, and on reconsideration on January 26, 2023. R. 53-72. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on December 14, 2023. R. 29-52. The ALJ issued a decision on February 1, 2024, denying benefits and finding Plaintiff not disabled because she could perform other work existing in the national economy. R. 10-24. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 27, 2021. R. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder (including myoclonic epilepsy); migraine headache disorder; obesity; major depressive disorder; unspecified anxiety disorder with panic attacks; and attention deficit hyperactivity disorder ("ADHD"). *Id.* The ALJ found her impairment of obstructive sleep apnea to be non-severe. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 13. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had moderate limitations in all four areas of (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 14-15.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of light work as follows:

> She is able to lift, carry, push or pull up to ten pounds frequently and twenty pounds occasionally; she is able to sit up to six hours in an eight hour workday; she is able to stand and/or walk up to six hours in an eight hour workday; her job should not involve climbing or work performed near unprotected heights and moving mechanical parts; she is able to perform work where there is moderate noise as that term is defined in the Selected Characteristics of Occupations ("SCO"); she is able to understand, remember and perform simple tasks; she is able to sustain attention and concentration up to two hours at [a] time, with routine breaks, when performing simple tasks; she is able to sustain the mental demands associated with performing simple tasks throughout an ordinary workday and workweek; she is able to interact with supervisors as needed to receive work instructions; she is able to work in proximity to co-workers but her job should not involve teamwork in order to complete work tasks; she is able to interact with the public if needed to refer a member of the public to a supervisor or co-worker for assistance but her job should not involve customer service or other work where interacting with the public is an essential function of the job; her job should involve no more than ordinary and routine changes to work setting or work duties; she is able to perform a low stress job, meaning a job that does not involve hourly

>production quotas or work tasks that are performed at a rapid, production-rate pace.

R. 15. At step four, the ALJ found that Plaintiff had no past relevant work. R. 22. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform the unskilled light jobs of Cleaner, Collator Operator, and Router. R. 22-23. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 23. Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

## III.  Issues

Plaintiff raises two points of error in her challenge to the denial of benefits: (1) the ALJ failed to properly evaluate the medical opinion of consultative examining psychologist Kara Rodgers, Psy.D.; and (2) the ALJ's RFC was not supported by substantial evidence. ECF No. 14.

## IV.  Analysis

### A.  **ALJ Properly Evaluated Dr. Rodgers' Psychological Opinions**

Plaintiff argues the ALJ failed to properly evaluate consultative psychologist Dr. Rodgers' opinions. *See* R. 459-461 (September 2022 consultative exam report of Dr. Rodgers). For claims filed after March 27, 2017, such as Plaintiff's claims, 20 C.F.R. § 416.920c provides that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion, based primarily on an opinion's supportability and consistency. 20 C.F.R. § 416.920c(b).

5

In this case, consultative psychologist Dr. Rodgers noted in the mental status exam that Plaintiff was fully oriented, identified common objects, followed a three-stage command, demonstrated good working memory, could abstractly reason and had good social judgment. R. 460. However, Plaintiff incorrectly spelled the word "world," could not add three single digits, and incorrectly repeated a series of five digits immediately after hearing them. *Id.* Dr. Rodgers stated that Plaintiff evidenced the ability to track the course and flow of the exam, concentrate, and focus, but that she displayed an inadequate fund of knowledge. *Id.* Dr. Rodgers reported that Plaintiff endorsed symptoms of depression and anxiety. R. 460. Plaintiff stated that her anxiety made it difficult for her to go out in public, and Dr. Rodgers opined that Plaintiff would "likely struggle with significant anxiety in a work environment, as she feels unsafe without a family member present." R. 460-461. Dr. Rodgers stated that Plaintiff "did not demonstrate any significant problems with concentration or focus, but did demonstrate some learning issues that could cause her difficulty in understanding, remembering and following through with tasks or instructions." R. 461. Dr. Rodgers gave provisional diagnoses of Major Depressive Disorder, Recurrent, Moderate; Unspecified Anxiety Disorder (with Panic Attacks); Rule Out Specific Learning Disorder; and Rule Out Intellectual Disability. *Id.* She found Plaintiff would be able to manage benefit payments in her own interest. *Id.*

The ALJ summarized Dr. Rodgers' exam findings and opinions, finding Dr. Rodgers' opinion to be partially persuasive to the extent it was in accordance with the ALJ's RFC. R. 19-20, 21. In finding the opinion partially persuasive, the ALJ explained that a limitation to simple tasks was supported by Dr. Rodgers' examination of Plaintiff, which showed deficits in spelling and immediate numerical recollection. R. 21 (citing R. 460). The ALJ found, however, that a finding that Plaintiff would have difficulty going out in public was not supported by Dr. Rodgers'

report that Plaintiff was cooperative throughout the exam, had a euthymic affect, had good eye contact, and stated that she goes to the store and out for fun with her family. *Id.* (citing R. 460). The ALJ also concluded that a finding that Plaintiff should have a low-stress job, meaning a job that does not involve hourly production quotas or work tasks that are performed at a rapid production rate, was consistent with the February 2022 exam of Plaintiff by Madison Wagner, P.T. *Id.* At that exam, Plaintiff endorsed that her migraines and seizures were brought on by increased stress. *Id.* (citing R. 346).

Plaintiff contends that the ALJ's analysis was insufficient. Specifically, she argues the ALJ should have addressed the persuasiveness of Dr. Rodgers' opinion that Plaintiff's learning issues "could cause her difficulty in understanding, remembering, and following through with tasks or instructions." Plaintiff argues that the ALJ implicitly rejected this part of the opinion by failing to incorporate it into the RFC.

Plaintiff's argument is unpersuasive. The ALJ addressed Dr. Rodgers' opinion regarding Plaintiff's limitations in understanding, remembering, and performing tasks or instructions, by limiting Plaintiff to "simple tasks" in the RFC. The ALJ explained that Dr. Rodgers' observations of difficulty with spelling and immediate recall supported the limitation to simple tasks. R. 21. Dr. Rodgers' opinion referred to "learning issues," which appear to link to her mental status findings demonstrating deficits in spelling, arithmetic, and immediate recall. R. 460-461. The ALJ further limited Plaintiff to a low-stress job, with only ordinary and routine changes to work setting or work duties, which may also accommodate difficulties in understanding, remembering, and performing tasks or instructions.

Plaintiff fails to explain how the RFC's limitation to simple tasks, along with the other restrictions explained above, would be inadequate to account for Dr. Rodgers' noted difficulties in

7

understanding, remembering, and performing tasks or instructions. Plaintiff briefly argues that her migraines and seizures would contribute to her inability to persist in work-related tasks, but Plaintiff does not explain how those conditions relate to the learning issues Dr. Rodgers identified or how the "simple tasks" limitation is inadequate to account for any fatigue, confusion, or sensitivity to light and sound associated with migraines and seizures.

In addition, Plaintiff does not take issue with the ALJ's finding that Dr. Rodgers' opinions were only partially persuasive. The ALJ was not required to adopt Dr. Rodgers' opinions using the same words she used in her report, as Plaintiff appears to argue. The Court identifies no error in the ALJ's evaluation of Dr. Rodgers' opinions.

**B.    Plaintiff's RFC Is Supported by Substantial Evidence**

Plaintiff argues the ALJ's physical and mental RFC was unsupported by substantial evidence, because the ALJ did not account for Plaintiff's alleged need to miss work several times per month due to seizures and migraine headaches. Plaintiff relies on records from the relevant period showing that she continued to have myoclonic jerking in October 2021, despite her seizures being under control and improvement in migraines with medications. R. 370. Plaintiff also relies on a December 2021 report that she was having ten to twelve migraine headaches per month. R. 362.

Plaintiff's argument is unpersuasive. While Plaintiff has a long history of seizures and migraines, her migraine and seizure activity significantly improved in 2022. As the ALJ noted, by February 2022, Plaintiff reported improved headaches on medications, despite some breakthrough seizure activity. R. 18 (citing R. 336). In April 2022, Plaintiff reported she was seizure free, and she was feeling good with reduced frequency of migraines and sleeping through the night. *Id.* (citing R. 326). In December 2022, Plaintiff reported experiencing approximately six migraines per month, with suspicion she was having seizures in her sleep. *Id.* (citing R. 555).

In May 2023, Plaintiff reported her last grand mal seizure occurred in September 2021, although she had daily myoclonic seizures. R. 606. In October 2023, Plaintiff reported more migraines and nighttime seizures, causing her neurologist to adjust her medications. R. 700, 704. However, at both the December 2022 and October 2023 visits with her neurologist, Plaintiff denied focal weakness, numbness, vision loss, and difficulty speaking or swallowing. R. 555, 700. Plaintiff identifies no probative records indicating that, with new treatments beginning in 2022, she would need to miss work multiple times per month due to migraines or seizures.

Plaintiff points to the opinion of Plaintiff's treating providers Dustin Rosenhamer, M.D., and Madison Wagner, D.P.T., that Plaintiff would be absent from work about three times or more per month. R. 541. However, the ALJ found this opinion "generally unpersuasive" (R. 21), and Plaintiff does not challenge the ALJ's persuasiveness finding. As a result, the Court does not consider this opinion to be probative of Plaintiff's need to be excessively absent from work. Plaintiff also briefly refers to difficulties with tachycardia and chest pain in 2023 (*see* R. 565, 579, 583, 591, 600, 608). However, Plaintiff fails to link these conditions to any functional impairments resulting in excessive absences from work.

In addition, the ALJ noted that the objective evidence was inconsistent with Plaintiff's allegations regarding the limitations resulting from her seizures. R. 17. For example, the ALJ explained that, although Plaintiff testified she experiences myoclonic seizures repeatedly all day long, which cause her to jerk and lose her balance, Plaintiff was still able to draw, paint, do puzzles, and crochet. R. 22 (citing R. 205). Plaintiff does not challenge the ALJ's consistency finding. The ALJ also explained that Plaintiff's physical examinations have shown normal findings, and Plaintiff has consistently denied focal weakness, numbness, and vision loss. *Id.* (citing R. 339, 362, 373, 552-553, 557-558, 565, 703, 705-706).

9

Plaintiff identifies no legitimate error in the ALJ's determination of the RFC. Plaintiff simply asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 26th day of March, 2025.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**